___

**SO ORDERED,**



*Judge Selene D. Maddox*

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE: MEDEX, LLC | CASE NO.: 24-11781-SDM |
| DEBTOR | CHAPTER 11 |
| MEDEX, LLC | PLAINTIFF |
| v. | ADV. PRO. NO.: 24-01035-SDM |
| REDMED, LLC | DEFENDANT |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO ABSTAIN OR DISMISS AND STAYING ADVERSARY PROCEEDING**

Before the Court is the Defendant RedMed, LLC's ("RedMed") Motion to Abstain under 28 U.S.C. § 1334(c) or, alternatively, Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A.P. Dkt. #4. The Plaintiff, MedEx, LLC ("MedEx") opposes this motion, arguing that this adversary proceeding properly seeks turnover of property under 11 U.S.C. § 542 and involves core bankruptcy issues under 11 U.S.C. § 541. After reviewing the pleadings, briefs, applicable law, and counsels' arguments, the Court concludes that the motion to abstain or dismiss should be granted to the extent the Court must or should abstain. Even so, dismissal of this case is not the appropriate remedy. The Court will stay this adversary proceeding pending resolution of

related state-court litigation, after which the parties may return, if necessary, for a final determination as to whether the now disputed property constitutes property of MedEx's bankruptcy estate and whether turnover is warranted.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C §§ 157(a), 1334, and the Standing Order of Reference signed by Chief Judge L.T. Senter and dated August 6, 1984. As discussed below, and as of the date of this Opinion and Order, this is a "non-core proceeding" under 28 U.S.C. § 157(c).

## II. BACKGROUND AND FACTS

**Initial Dispute and State Court Litigation**

This adversary proceeding arises from an ongoing dispute between MedEx and RedMed dating back to 2019. The dispute initially began with litigation filed in the Circuit Court of Lafayette County, Mississippi (the "Lafayette Action"). At the center of this litigation was an alleged breach by John Logan, principal of MedEx, of a covenant not to compete with RedMed and related entities. This action involved multiple parties: MedEx, John Logan, Samantha Logan, M2 Billing Company, and MedPlus Urgent Care, LLC ("MedPlus") (collectively, the "Logan Parties") against RedMed, Covenant Investments Series II, Inc. ("Covenant," the sole member of RedMed), and other related defendants.

**The Fulton Clinic and Related Entities**

Central to the parties' dispute is the "Fulton Clinic," a medical facility located in Fulton, Itawamba County, Mississippi, operated by MedPlus Fulton, LLC ("MedPlus Fulton"). MedPlus, a distinct entity from MedEx, was a member of MedPlus Fulton, while MedEx itself was not an owner or direct member. Instead, MedEx maintained a contractual relationship with MedPlus

Fulton under a Management Services and Compensation Agreement, which permitted MedEx to provide administrative and management services to the Fulton Clinic.

**The 2021 Settlement Agreement and Subsequent Dispute**

In July 2021, during mediation of the Lafayette Action, the parties purportedly reached a settlement. The key terms reportedly required John Logan to transfer his membership interest in MedPlus Fulton to its other members, cease all management and billing activities, and agree to a five-year, five-mile non-compete covenant regarding the Fulton Clinic. In return, Logan was to receive 50% percent of the clinic's accounts receivable billed up to a specified date, and all related litigation was to be dismissed. A dispute soon emerged over whether all parties had agreed to all essential terms of the settlement. Despite objections from the Logan Parties, the Lafayette County Circuit Court entered an order enforcing the settlement agreement.

**Mississippi Supreme Court Reversal**

The Logan Parties appealed the enforcement order to the Mississippi Supreme Court. On January 11, 2024, the Supreme Court reversed the Lafayette County Circuit Court, ruling that the parties had not reached a binding agreement on all material terms, and remanded the case for further proceedings, including unwinding the enforced settlement and proceeding to trial on the original covenant-not-to-compete claims.

**Creation of RedMed Fulton, LLC**

Following the Lafayette Circuit Court's order (but prior to its reversal), MedPlus Fulton ceased operations, and its members wound down the LLC. Subsequently, a new entity, RedMed of Fulton, LLC ("RedMed Fulton"), opened a medical clinic at the same location. RedMed Fulton has continuously operated this facility since early 2022. Notably, neither MedEx nor RedMed,

LLC were direct members or owners of MedPlus Fulton. Covenant, the parent company of RedMed, similarly held no direct membership interest in MedPlus Fulton.

**Chancery Court Proceedings (The Itawamba Action)**

Shortly after the Mississippi Supreme Court's reversal, on February 2, 2024, MedEx, M2 Billing, and MedPlus initiated another lawsuit in the Chancery Court of Itawamba County, Mississippi (the "Itawamba Action"), seeking turnover of the Fulton Clinic, among other relief. The defendants in the Itawamba Action included RedMed Fulton and Oxford Leasing, LLC, another entity associated with the Fulton Clinic property. On October 30, 2024, the Itawamba Chancery Court transferred the case to the Lafayette County Circuit Court, citing Mississippi's priority jurisdiction rule. The Chancery Court concluded that the Lafayette County Circuit Court was the proper forum to resolve the issues raised due to its familiarity and ongoing jurisdiction stemming from the original litigation and Supreme Court remand.

**Bankruptcy Filing and Adversary Proceeding**

Following these state-court developments, MedEx filed for Chapter 11 bankruptcy protection in June of 2024, the underlying case related to this proceeding, Case No. 24-11781-SDM. On December 30, 2024, MedEx commenced this adversary proceeding against RedMed, seeking turnover under 11 U.S.C. § 542 and injunctive relief to regain control and management rights over the Fulton Clinic.[1] MedEx argues that its management services contract constitutes property of its bankruptcy estate, and that the Mississippi Supreme Court's reversal mandates restoring the clinic's management to MedEx as the status quo ante.

---

[1] MedEx's Complaint contains only two counts: (1) Turnover of property, management, operation, and control of the Fulton Clinic and (2) A temporary restraining order, preliminary and permanent injunction directing RedMed to turnover the operation, management, and control of the Fulton Clinic.

**RedMed's Motion to Abstain or Dismiss**

RedMed filed this abstention motion under 28 U.S.C. §1334(c), or alternatively to dismiss under Fed. R. Civ. P. 12(b)(6). RedMed asserts that mandatory or discretionary abstention applies, arguing this adversary proceeding is merely a state-law property dispute labeled improperly as a turnover action. RedMed further contends that MedEx lacks an ownership or possessory interest sufficient to invoke turnover provisions and has engaged in improper claim-splitting and forum shopping by seeking to litigate in bankruptcy court what should be decided in state court.

MedEx disputes RedMed's arguments, asserting that this adversary proceeding is appropriately before the bankruptcy court as a legitimate and core turnover action under 11 U.S.C. § 542. MedEx argues it possesses clear and enforceable management rights over the Fulton Clinic under a valid executory contract, rights that constitute valuable property of its bankruptcy estate. MedEx maintains that neither mandatory nor discretionary abstention is proper because the proceeding involves enforcement of bankruptcy-specific rights, particularly related to assumption or rejection of executory contracts—issues uniquely within the jurisdiction of this Court. Further, MedEx rejects claims of forum shopping and claim-splitting, explaining its actions are necessary steps to protect critical estate interests following the Mississippi Supreme Court's reversal of the state-court enforced settlement.

At the hearing on April 22, 2024, the parties reasserted their primary arguments. RedMed argued this adversary proceeding is fundamentally a state law matter arising from a dispute over a reversed state court settlement involving MedEx's principal, John Logan. RedMed claimed this is neither a legitimate bankruptcy turnover action nor a core proceeding, as it involves highly contested state-law issues and property rights. RedMed further contended that mandatory abstention under 28 U.S.C. § 1334(c)(2) clearly applies, but even if not, discretionary abstention

is warranted due to forum shopping, the state court jury trial right, and judicial comity. Additionally, RedMed sought dismissal under Rule 12(b)(6) because MedEx lacks direct rights in the property and has engaged in improper claim splitting.

On the other hand, MedEx argued this adversary proceeding is a straightforward and valid bankruptcy turnover action seeking enforcement of a valuable executory contract. MedEx emphasized its bankruptcy rights, asserting the contract has not been terminated and is essential property of its bankruptcy estate. MedEx further argued that this action is a core bankruptcy matter, as only this Court can decide matters involving assumption or rejection of executory contracts. MedEx denied claim splitting or forum shopping, asserting its actions are necessary protective measures to maintain estate assets and legitimate business operations.

In summary, counsel for RedMed is correct in his assertion that the background which led to the filing of this adversary proceeding is nothing short of convoluted. Nevertheless, the Court believes the dispute can be summed up in five categories. The first being the scope of MedEx's rights: MedEx contends its contractual rights under the Management Services Agreement rise to the level of enforceable property rights over the Fulton Clinic. Conversely, RedMed maintains these rights are limited purely to contractual management, not ownership or possession. The second category is the effect of the Mississippi Supreme Court's reversal. MedEx interprets the Supreme Court reversal as automatically restoring its management and operational control of the Fulton Clinic, while RedMed argues that the reversal merely vacated the enforced settlement, remanding substantive issues for further judicial determination.

Moving to the third category, MedEx insists its bankruptcy filing and the current adversary proceeding are legitimate and necessary steps to protect estate property. RedMed counters that the filing constitutes forum shopping intended to circumvent unfavorable state court rulings,

questioning the legitimacy of the adversary proceeding. The parties also dispute the nature of the proceeding, i.e., core vs. non-core. MedEx characterizes this adversary proceeding as a core turnover matter within bankruptcy jurisdiction. RedMed disagrees, asserting the matter is fundamentally a non-core, state-law dispute more appropriately resolved by the pending state litigation. Finally, the dispute lies with the operation of RedMed's Fulton Clinic. MedEx implies RedMed Fulton improperly succeeded the Fulton Clinic operations, effectively displacing MedEx's management rights. RedMed counters that the operations of RedMed Fulton were legitimate, separate actions following the cessation of MedPlus Fulton's business.

### III. DISCUSSION

The Court has carefully considered each party's detailed arguments and the complex procedural and factual history presented. To resolve the pending motion, the Court must simply evaluate whether mandatory or discretionary abstention under 28 U.S.C. § 1334(c) applies and determine whether MedEx's adversary complaint sufficiently states a claim under Federal Rule of Civil Procedure 12(b)(6). As explained below, the Court concludes it must abstain at this juncture. And as result, the Court finds that judicial economy and respect for state court jurisdiction justify staying this proceeding pending resolution of related state court litigation. If MedEx is successful in the ongoing state court litigation, it may simply return to this Court to resolve any property of the estate and/or turnover issues if they, in fact, exist.

**A. Defendant's Motion to Abstain under 28 U.S.C. § 1334(c)**

**1. Mandatory Abstention under 28 U.S.C. § 1334(c)(2)**

Mandatory abstention applies under 28 U.S.C. § 1334(c)(2) when all of the following elements are established: (1) a party timely files a motion requesting abstention; (2) the claim or cause of action is based solely on state law; (3) the proceeding is related to a case under Title 11, rather than arising under Title 11 or arising in a case under Title 11, meaning the proceeding is

"non-core"; (4) there is no independent basis for federal jurisdiction apart from § 1334; (5) an action involving the same issues has commenced and is still pending in state court; and (6) the state court action can be timely adjudicated. *In re Lorax Corp.*, 295 B.R. 83, 89–90 (Bankr. N.D. Tex. 2003); *In re Southmark Corp.*, 163 F.3d 925, 929 n. 2 (5th Cir. 1999); *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 782–83 (E.D. Tex. 2001). Each element must be satisfied by a preponderance of the evidence, and failure to prove even one element precludes mandatory abstention. *Lorax*, 295 B.R. at 90. To determine if a proceeding is "core" or "non-core," courts look to whether the proceeding invokes a substantive bankruptcy right or is inherently bankruptcy-specific, arising only within a bankruptcy context. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987); *Lorax*, 295 B.R. at 88–89; *In re Harris*, 663 B.R. 457, 469 (Bankr. N.D. Miss. 2024).

Simply labeling an action as a turnover proceeding under 11 U.S.C. § 542 does not automatically render it core, especially if there are substantial and legitimate disputes regarding property rights under state law. *In re Ven-Mar International, Inc.*, 166 B.R. 191, 192–93 (Bankr. S.D. Fla. 1994). Indeed, turnover actions under 11 U.S.C. § 542 are core proceedings only when they involve clearly identifiable and undisputed estate property; substantial disputes about property interests make a turnover claim non-core. See *In re Chapman*, 2018 WL 4620719, at *3–5 (Bankr. S.D. Tex. June 8, 2018). Based on a review of the elements and applying the facts in this proceeding, mandatory abstention under 28 U.S.C. § 1334(c)(2) applies because all required elements are satisfied.

**Timely motion for abstention**

RedMed timely filed its motion requesting mandatory abstention. Thus, element one is satisfied.

**Claims based solely on state law**

MedEx's complaint primarily seeks enforcement of a contractual Management Services Agreement related to the Fulton Clinic. The underlying rights MedEx seeks to enforce originate entirely under Mississippi state contract and property law. Although MedEx attempts to cast the action as turnover under § 542, the claims themselves substantively rest solely on state-law contractual and property rights. Thus, this second element is met.

**Proceeding is "related to," not "arising in" or "arising under" Title 11 (core vs. non-core)**

This element is critical and central to the Court's determination. While turnover actions under § 542 typically constitute core proceedings, turnover jurisdiction is narrowly defined to apply only to property clearly belonging to the debtor's estate without substantial dispute. Here, RedMed explicitly and vigorously contests MedEx's entitlement to the managerial and operational rights over the Fulton Clinic, creating a substantial and genuine dispute about state-law based property rights. Such significant disputes render MedEx's purported turnover claim non-core. Instead, the proceeding *at this juncture* is properly viewed as "related to" the bankruptcy case rather than arising explicitly under Title 11. Accordingly, this critical third element—non-core characterization—is also satisfied.

**No independent basis for federal jurisdiction**

No federal-question jurisdiction or diversity jurisdiction exists independent of bankruptcy jurisdiction under 28 U.S.C. § 1334. The claims involve Mississippi-based entities litigating purely state-law contractual issues. Thus, the fourth element is satisfied.

**Existing state court action involving same issues**

The Lafayette County Circuit Court action involving substantially similar parties, contractual claims, and disputed property issues predates this adversary proceeding. That litigation

remains ongoing, active, and this Court has previously approved employment of special counsel to represent MedEx.[2] Thus, the fifth element is clearly satisfied.

**Timely adjudication in state court**

There is no credible assertion or evidence suggesting the Lafayette County Circuit Court cannot promptly and efficiently adjudicate these issues. Indeed, that court is already familiar with the complex history and parties involved, and it is well-positioned to timely resolve the contractual disputes and effect of the Mississippi Supreme Court's decision. Thus, the sixth element is also satisfied.

In summary, each required element under § 1334(c)(2) is met. Central to this determination is the recognition that turnover jurisdiction under § 542 is inappropriate in cases involving substantial disputes about property rights. By properly characterizing MedEx's claims as non-core currently, the Court aligns with established precedent, respects state court jurisdiction, and appropriately applies mandatory abstention. Nevertheless, instead of dismissing this proceeding outright, which could prejudice MedEx if the state court eventually confirms MedEx's claimed property rights, the Court finds staying this adversary proceeding better serves judicial economy, comity, and fairness.[3] A stay ensures that, should MedEx ultimately prevail in state court but encounter resistance from RedMed or its related entities, MedEx retains an efficient mechanism to enforce turnover promptly in the bankruptcy court without initiating new litigation.

---

[2] See *Order Granting Application to Employ Special Counsel* (Dkt. #87) (Approving the employment of Chandler Rogers to represent MedEx in the state court litigation).

[3] See *In re Just Energy*, 57 F.4th 241 (5th Cir. 2023) (remanding to the bankruptcy court to determine the appropriate procedural remedy post-abstention) and *In re Just Energy,* Adv. Pro. No. 21-04399, *Order Staying Adversary Proceeding* [ECF No. #261] (Bankr. S.D. Tex. March 9, 2023) (staying proceeding pending the outcome of state court proceedings).

**2. Discretionary Abstention under 28 U.S.C. § 1334(c)(1)**

Even if mandatory abstention under § 1334(c)(2) were not to apply in this proceeding, bankruptcy courts retain broad discretion to abstain from hearing certain proceedings under 28 U.S.C. § 1334(c)(1). This discretionary abstention provision allows a court to abstain "in the interest of justice, or in the interest of comity with state courts or respect for state law." *Lorax*, 295 B.R. at 90. In deciding whether discretionary abstention is appropriate, courts weigh multiple factors including:

- The effect (or lack thereof) on the efficient administration of the bankruptcy estate;
- The predominance of state-law issues;
- The complexity or unsettled nature of the state law involved;
- The presence of a related proceeding already commenced in state court;
- Whether there is an independent basis for federal jurisdiction apart from the bankruptcy filing;
- The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
- The substance, rather than form, of the alleged core proceeding;
- Feasibility of severing state law claims from bankruptcy issues;
- The burden on the bankruptcy court's docket;
- The likelihood that forum shopping motivated the commencement of proceedings;
- The existence of a right to jury trial;
- The presence of non-debtor parties;
- Comity; and
- Potential prejudice to the parties.

*Lorax*, 295 B.R. at 95; *In re Southmark Corp.*, 163 F.3d at 929; *Searcy v. Knostman*, 155 B.R. 699, 710 (S.D. Miss. 1993). Permissive abstention, however, is exercised cautiously, as federal courts generally have an obligation to exercise jurisdiction. Congress intended that discretionary abstention allow courts flexibility to address issues of judicial efficiency, comity, and respect for state law. *Lorax*, 295 B.R. at 95.

Because the Court concludes mandatory abstention applies under § 1334(c)(2), further detailed consideration of discretionary abstention under § 1334(c)(1) is unnecessary. Nevertheless, the Court notes briefly that several discretionary abstention factors, including predominance of state law claims, existing state-court litigation, and concerns regarding judicial economy and comity, would also support discretionary abstention in this matter. Ultimately, however, due to the clear applicability of mandatory abstention, further analysis under § 1334(c)(1) is not required at this time.

**B. Defendant's Alternative Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

Given the Court's determination that mandatory abstention under 28 U.S.C. § 1334(c)(2) applies, and the adversary proceeding will be stayed rather than dismissed, the Court must still address RedMed's alternative request for dismissal under Federal Rule of Civil Procedure 12(b)(6). The purpose of this analysis is to clarify that dismissal is unwarranted at this stage, as MedEx's Complaint satisfies the minimum pleading standards. The general rules of pleading provide that a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief" and "a demand for relief". Fed. R. Civ. P. 8(a). To survive dismissal under Rule 12(b)(6), an adversary complaint must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In considering whether a plaintiff meets this burden, the Court must construe the complaint liberally in favor of the non-moving party and assume the truth of all well-pleaded facts. *In re*

*Putman*, 519 B.R. 491, 493 (Bankr. N.D. Miss. 2014). The complaint may not rest on mere conclusions, but must assert specific facts, and the claim for relief must also be "plausible." *In re Oxford Expositions, LLC*, 466 B.R. 814, 816 (Bankr. N.D. Miss. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In other words, the plaintiff's obligation to provide the "grounds" of his "entitlement to relief" must be more than labels and conclusions, and a mere recitation of a cause of action's elements will not suffice. *Twombly*, 550 U.S. at 555. In ruling on the sufficiency of a plaintiff's complaint, a court may rely on: (1) the complaint itself and its proper attachments; (2) documents incorporated into the complaint by reference; and (3) matters of which a court may take judicial notice. *Putman*, 519 B.R. at 493.

Here, RedMed seeks dismissal primarily based on three arguments: (1) MedEx's alleged lack of ownership or control over the Fulton Clinic; (2) MedEx's alleged lack of standing under § 542 of the Bankruptcy Code; and (3) improper claim-splitting by MedEx.

**1. Ownership and Control Issues Concerning MedPlus Fulton and Fulton Clinic**

RedMed asserts that MedEx lacks the necessary ownership or control to support its claims for turnover relief, emphasizing that MedEx was never a direct owner or member of MedPlus Fulton. Instead, RedMed points out that the contractual relationship was solely between MedEx, MedPlus Fulton, and Oxford Leasing LLC. RedMed argues that it is neither a party to this agreement nor directly responsible for obligations arising from it.

MedEx, however, has pled specific factual allegations suggesting that it possessed valid and enforceable contractual rights through the Management Services and Compensation Agreement with MedPlus Fulton. These rights allegedly include management and operational control of the Fulton Clinic. MedEx specifically alleges that after the Lafayette County Circuit

Court's settlement enforcement (later reversed), MedPlus Fulton was wound down, and control of the Fulton Clinic transferred to RedMed's wholly-owned subsidiary, RedMed Fulton. MedEx thus contends that RedMed, through its subsidiary, has effectively assumed the control previously exercised by MedPlus Fulton, placing RedMed directly within the scope of this litigation. Given these assertions, MedEx has sufficiently alleged plausible grounds regarding ownership and control issues to avoid dismissal at this stage because the Complaint adequately articulates specific factual circumstances and attaches relevant supporting documentation.

**2. Plaintiff's Standing to Seek Relief Asserted**

RedMed challenges MedEx's standing to assert claims in this adversary proceeding, asserting MedEx never possessed a direct property or ownership interest in MedPlus Fulton or the Fulton Clinic sufficient to seek turnover relief. According to RedMed, MedEx's rights under the management agreement are purely contractual and cannot be treated as property of the bankruptcy estate warranting turnover under 11 U.S.C. § 542 of the Bankruptcy Code.

MedEx, in response, clearly alleges specific facts that demonstrate a direct and substantial interest in the Fulton Clinic operations through its executory contractual rights.[4] MedEx emphasizes that these rights remain enforceable and have not been legally terminated, asserting that such rights constitute property of the estate under the broad definitions recognized in bankruptcy law. In addition, MedEx alleges specific harm arising from RedMed's actions following the reversed settlement, directly affecting MedEx's contractual management rights and ongoing business operations. Accepting these factual assertions as true for the purpose of this

---

[4] Notably, it is unclear whether the Management Services and Compensation Agreements listed in MedEx's amended Schedule G refers to the Management Services and Compensation Agreement in dispute here. Nonetheless, the disputes arising from the Agreement should be litigated before the contract can, or should be, assumed.

motion, MedEx has sufficiently pled a plausible basis to establish its standing, as it has articulated specific harm to enforceable contractual rights that could reasonably constitute estate property.

### 3. Analysis of Improper Claim-Splitting Allegations

RedMed further argues that MedEx's claims must be dismissed due to improper claim-splitting, noting that MedEx has pursued multiple actions in state and federal court based on essentially identical claims and factual circumstances. RedMed contends these parallel proceedings reflect MedEx's inappropriate forum shopping. In response, MedEx asserts that its conduct does not constitute improper claim-splitting, but rather reflects procedural complexities and strategic necessity arising from multiple parties and overlapping actions. Specifically, MedEx explains that it pursued state-court relief initially due to jurisdictional uncertainties following the Supreme Court's reversal. MedEx further claims the bankruptcy filing and this adversary proceeding were not tactical maneuvers, but necessary measures to protect the bankruptcy estate's interests, particularly in enforcing executory contract rights uniquely available under bankruptcy jurisdiction.

Given the factual allegations contained in MedEx's complaint, which explicitly reference and incorporate documentation of the prior proceedings and judicial rulings, the Court finds at this stage that MedEx has pled sufficient specific facts to rebut RedMed's claim-splitting arguments. While factual complexities surrounding procedural history are evident, the Court cannot conclude, based solely on pleadings and at the motion to dismiss stage, that MedEx's actions constitute impermissible claim-splitting. These considerations are more appropriately determined through subsequent factual inquiry and evidentiary proceedings, if necessary, after conclusion of the state court litigation rather than through dismissal at this juncture.

Further, the Court does recognize that dismissal under Rule 12(b)(6) could ordinarily be appropriate in a turnover action under § 542 when, as here, substantial disputes exist concerning entitlement to the alleged estate property. Indeed, turnover proceedings under § 542 typically require clearly identifiable and undisputed estate property. Here, significant factual and legal disputes about MedEx's entitlement to managerial and operational rights over the Fulton Clinic are evident from the pleadings and arguments. Again, given this scenario, ordinarily, dismissal under Rule 12(b)(6) could be appropriate because the current pleadings alone do not clearly establish an undisputed right to turnover. However, recognizing the complexity and history of litigation between these parties and respecting the principles of judicial economy and comity with state courts, a stay of proceedings rather than outright dismissal is more appropriate. Allowing the state court to determine the underlying property rights first ensures that the bankruptcy court subsequently deals only with clearly defined bankruptcy-specific issues. This approach better preserves resources and avoids duplication while maintaining federal jurisdiction over ultimate estate-property determinations.

In summary, because the Court has determined that mandatory abstention applies and has chosen to stay this adversary proceeding pending the resolution of ongoing state-court litigation, outright dismissal under Rule 12(b)(6) at this stage would be premature. Should MedEx prevail in state court and establish clear entitlement to the disputed property, the bankruptcy court can promptly adjudicate any remaining turnover issues at that time. Thus, dismissal under Rule 12(b)(6) is denied without prejudice, with the adversary proceeding stayed accordingly.

## IV. CONCLUSION

In conclusion, the Court finds that mandatory abstention under 28 U.S.C. § 1334(c)(2) applies because MedEx's turnover claims involve substantial disputes regarding property rights,

rendering this proceeding non-core under applicable law. Abstaining preserves state-court jurisdiction, respects principles of comity, and appropriately allows the Lafayette County Circuit Court to first conclusively resolve the underlying state-law disputes. Rather than dismissing this adversary proceeding outright, the Court will stay this action pending the state court's resolution. If, following the state court's final determination, MedEx obtains a favorable ruling clearly establishing its managerial rights, the bankruptcy court retains jurisdiction to promptly adjudicate any remaining turnover issues under 11 U.S.C. § 542.

This approach is consistent with the parties' briefs and relevant statutory and case law and addresses RedMed's concerns regarding claim splitting by explicitly deferring to the state-court litigation.

Accordingly, the Court orders as follows:

1. RedMed's Motion for Abstention under 28 U.S.C. § 1334(c)(2) is **GRANTED**.

2. The Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is **DENIED WITHOUT PREJUDICE**.

3. This adversary proceeding is **STAYED** pending final adjudication of the related Lafayette County Circuit Court litigation.

4. The Debtor shall file a statement of progress with this Court every six months beginning December 1, 2025 detailing the status and progression of the state-court proceeding.

5. Upon conclusion of state-court proceeding, the parties shall return to this Court to determine whether turnover relief under 11 U.S.C. § 542 is warranted or if dismissal is appropriate.

##END OF ORDER##